UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SOAPROJECTS, INC., | Case No.: 10-CV-01773-LHK |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART SCM MICROSYSTEMS, INC.'S MOTION TO DISMISS |
| v. | |
| SCM MICROSYSTEMS, INC. (d/b/a Identive Group) and KAMAL KANT GUPTA, | |
| Defendants. | |

On August 27, 2010, Defendant SCM Microsystems, Inc. moved to dismiss four of Plaintiff SOAProjects, Inc.'s claims. Dkt. No. 27 ("Mot. to Dismiss"); *see also* Dkt. No. 33 ("Reply Br."). SOAProjects opposes the motion. Dkt. No. 31 ("Opp'n"). After hearing oral argument and considering the parties' submissions, this Court GRANTS in part and DENIES in part SCM's motion.

**I. BACKGROUND**

SOAProjects claims that SCM improperly hired one of its consultants in breach of contract and further alleges that SCM acted in concert with this consultant to illegally obtain SOAProjects' confidential information and trade secrets. SOAProjects supports these claims with the following allegations from its First Amended Complaint ("FAC," Dkt. No. 22).

///

### A. Master Agreement

SOAProjects, a California corporation, provides consulting services. FAC ¶ 2, 10. In August 2008, SOAProjects entered into a written Master Agreement with SCM, a provider of solutions for secure access, secure identity, and secure exchange. *Id.* ¶¶ 3, 11. This Master Agreement, signed by representatives of both parties, provided the following. *Id.* ¶ 12. First, the Master Agreement provided that SOAProjects would supply SCM with "financial and accounting compliance projects." *Id.* ¶ 12. Second, pursuant to the Master Agreement, an Addendum for Services would be created for each project. *Id.* ¶ 13. This Addendum would be signed by representatives from both parties and would specify in writing the rate and date for each respective project. *Id.* Third, the Master Agreement provided that California law would govern. *Id.* ¶ 14. Fourth, the Master Agreement contained a provision restricting SCM from soliciting SOAProjects consultants.[1] *Id.* ¶ 15. This provision included a monetary penalty if breached. *Id.* ¶ 16.

Pursuant to a September 1, 2008 Addendum, SOAProjects agreed to provide consulting services to SCM in connection with stock administration work. *Id.* ¶ 17.

### B. Confidentiality Agreement

On September 17, 2008, SOAProjects and Defendant Kamal Kant Gupta entered into an Employment Agreement and a Confidentiality Agreement. *Id.* ¶ 18. Under the Confidentiality Agreement, Gupta agreed not to disclose SOAProjects' confidential information, as defined by the agreement, or use such information except for the benefit of SOAProjects. *Id.* ¶¶ 21-22.

To protect access to its confidential and proprietary information, SOAProjects maintains a Virtual Private Network ("VPN"). *Id.* ¶ 24. Access to the VPN is restricted to SOAProjects employees only and is password-protected. *Id.* Not all with access to the VPN, however, can access SOAProjects trade secrets. Such access is limited to high level employees. *Id.* SOAProjects also subscribes to licensed research tools that require passwords and login

---

[1] As alleged in the FAC, the provision provided: "SCM agrees that, for so long as this Agreement and the original engagement letter is in effect and for a period of one (1) year after its termination SCM will not, for any purpose(s), solicit . . . any SOAProjects consultants identified during their consulting services by SOAProjects." FAC ¶ 15.

2

Case No.: 10-CV-01773-LHK
ORDER GRANTING IN PART AND DENYING IN PART SCM'S MOTION TO DISMISS

information to access. *Id.* ¶ 25. Gupta had access to both trade secrets through the VPN and SOAProjects' licensed research tools. *Id.* ¶ 31.

### C. Employment Transition Agreement

During his time at SOAProjects, Gupta provided financial consulting and compliance services to SCM and worked on a proposal for SOAProjects to assist SCM with other services. *Id.* ¶ 32-35. On or before October 2009, SCM began soliciting Gupta for employment. *Id.* ¶ 36. SCM and Gupta then initiated negotiations with SOAProjects to allow Gupta to join SCM. *Id.* ¶ 37. Following these negotiations, SOAProjects and SCM allegedly entered into an Employment Transition Agreement. *Id.* ¶ 38. Under the Employment Transition Agreement, SOAProjects agreed not to enforce the non-solicitation clause in the Master Agreement. *Id.* In exchange, SCM agreed to pay SOAProjects a fee of 25% of Gupta's annual base compensation and to continue to engage SOAProjects for all technical accounting projects as required for at least the fiscal years 2010 and 2011. *Id.* Furthermore, SCM agreed that Gupta would not perform for SCM "in-house" the same services that SOAProjects performed for SCM. *Id.* SOAProjects claims that SCM's Chief Financial Officer Martin Wimmer confirmed these conditions during a November 26, 2009 conference call. *Id.* ¶ 41.

On November 22, 2009, Gupta sent an e-mail to Manav Singh, a senior executive at SOAProjects, confirming in writing certain conditions of Gupta's transition to SCM. *Id.* ¶ 39. Gupta confirmed that SOAProjects would be paid 25% of his salary upfront. *Id.* In addition, Gupta confirmed that his new job at SCM would mainly involve operations responsibility, and therefore, SCM would still need SOAProjects to assist on technical accounting work. *Id.* ¶ 40. On December 3, 2009, Wimmer also sent Singh a letter documenting SCM's intent to continue to use SOAProjects in the future. *Id.* ¶ 42.

### D. Misappropriation of Trade Secrets

According to SOAProjects, between November 10, 2009 and December 3, 2009, Gupta created files on his computer containing copies of confidential and proprietary information. *Id.* ¶ 51. SOAProjects claims there was no business justification for this activity. *Id.* Gupta left SOAProjects on December 24, 2009 and returned his computer to a SOAProjects Human

3

Resources Director. *Id.* ¶ 49. According to SOAProjects, Gupta later returned and, through allegedly deceptive means, persuaded the HR Director to give him access to his old computer and to the VPN password. *Id.* ¶¶ 57-61. Using his computer, Gupta accessed SOAProjects' trade secrets and confidential information and sent himself an e-mail containing this information. *Id.* ¶ 63. Gupta then returned the computer. *Id.* ¶ 70.

SOAProjects claims that Gupta is now working at SCM and is using SOAProjects' trade secrets and confidential information to perform services for SCM that SOAProjects previously provided. *Id.* ¶¶ 73-75. It alleges that SCM acted in concert with Gupta and is kowingly enjoying the benefits of his theft. *Id.* ¶ 141. Since hiring Gupta, SCM has not used SOAProjects' services for any new projects. *Id.* ¶ 76. In addition, SOAProjects claims that Gupta has contacted current and potential clients and has convinced some of them not to hire SOAProjects. *Id.* ¶¶ 83-84.

Although SCM disputes that Gupta is using SOAProjects' trade secrets and confidential information, SCM's counsel conceded at the hearing that Gupta is in Germany working for SCM as SCM's Vice President of Finance and Corporate Controller.

**E. Current Action and Motion**

On April 23, 2010, SOAProjects filed its original complaint alleging nine causes of action against SCM and Gupta. Dkt. No. 1. After SCM moved to dismiss SOAProjects' claims against it, Dkt. No. 11, the parties stipulated to, and the court approved of, SOAProjects filing an amended complaint, Dkt. Nos. 18, 19. In its FAC, SOAProjects alleges thirteen causes of action. It makes claims for relief against Gupta based on the following: Violations of Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030), Violations of Computer Data Access and Fraud Act (CAL. PENAL CODE § 502), Trespass to Chattels, Breach of Contract, Misappropriation of Trade Secrets, Tortious Interference with Contract, Tortious Interference with Prospective Economic Advantage, Fraud, Trade Libel, and Unfair Business Practices (CAL. BUS. & PROF. CODE § 17200 *et seq.*).

At issue in this motion to dismiss are SOAProjects' claims against SCM: Breach of Contract, Promissory Estoppel, Unjust Enrichment, and Misappropriation of Trade Secrets. SCM moves this Court under FED. R. CIV. P. 12(b)(6) to dismiss all four claims as against SCM.

///

## II. LEGAL STANDARD

A district court may dismiss a pleading that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) test "the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted). Although the pleading need not contain detailed factual allegations to survive a motion to dismiss, it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). This occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In making this determination, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). This does not, however, apply to legal conclusions. *See Iqbal*, 129 S. Ct. at 1949. If a district court dismisses a claim, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quotation and quotation marks omitted).

## III. ANALYSIS

SCM moves this Court to dismiss SOAProjects' fourth claim (breach of contract), fifth claim (promissory estoppel), sixth claim (unjust enrichment), and eighth claim (misappropriation of trade secrets) against SCM. The Court will consider each claim in turn.

### A. Breach of Contract

SOAProjects' breach of contract claim is based on SCM's alleged breach of the Employment Transition Agreement. Opp'n 3. SCM argues that the claim must fail because SOAProjects has not pled facts showing the existence of a valid and enforceable contract. Mot. to Dismiss 6. SOAProjects' complaint does not contain allegations that the Employment Transition Agreement was ever reduced, in its complete form, to writing. Under California's statute of frauds,

"[a]n agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless it, "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." CAL. CIV. CODE § 1624(a)(1). Neither party appears to dispute that the Employment Transition Agreement was not to be performed within a year. As alleged, SCM promised "to continue to engage SOAProjects for all technical accounting projects as required for at least the fiscal years 2010 and 2011." FAC ¶ 38, 41.

SOAProjects, however, makes three arguments defending the validity of its contract. Although two of these arguments fail, one does permit SOAProjects' breach of contract claim to survive SCM's motion to dismiss.

### 1. Memorandum that Satisfies the Statute of Frauds

First, SOAProjects argues that then SCM Chief Financial Officer Martin Wimmer's December 3, 2009 letter to then SOAProjects CEO Manav Singh constitutes a memorandum sufficient to satisfy the writing requirement of California's statute of frauds.[2] Opp'n 5. "A memorandum satisfies the statute of frauds if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty." *Sterling v. Taylor*, 40 Cal. 4th 757, 766, 55 Cal. Rptr. 3d 116, 123, 152 P.3d 420, 425, (2007). "What is essential depends on the agreement and its context and also on the subsequent conduct of the parties." *Id.* (quotation omitted). According to SOAProjects' complaint, Wimmer's letter stated the following:

> I would like to hereby confirm our agreement that SCM intends to continue to use SOAProjects for all technical accounting projects as and when required and all [financial consulting and compliance services] projects in Santa Ana and Germany, to the extent possible, at least for fiscal year 2010 and 2011. As discussed, the hiring of Mr. Kamal Kant [Gupta] does not mean that SCM intend [sic] not to use SOAProjects services in the future; on the contrary, we intend to continue to engage your team for projects as appropriate. We appreciate you making this exception for us and your support in the hiring of Mr. Kamal Kant to SCM.

FAC ¶ 43 (alterations in original).

---

[2] None of the parties dispute that Wimmer's letter was subscribed, as required by the statute of frauds, by SCM's agent.

The letter contains some evidence of the existence of a contract. In the first line, the letter states that it is confirming a previous agreement between SCM and SOAProjects. The letter proceeds to set out a basic requirements contract that is set to last for more than one year. For at least 2010 and 2011, SCM will use SOAProjects to perform certain services. The letter even goes so far as to identify two specific geographic areas where SOAProjects will provide other services.

SCM correctly points out, however, that the language of the letter is too general and indeterminate to satisfy the statute of frauds. Reply Br. 3-4. The letter uses words such as "intends," "to the extent possible," "as and when required," and "as appropriate." *Id.* at 4. Such words fail to provide reasonable certainty as to what the contract requires of the parties during the period of time allegedly covered by the contract.

Moreover, the letter leaves out several of the other alleged terms of the Employment Transition Agreement, including the 25% of Gupta's salary fee and the restriction on SCM's use of Gupta "in-house." Reply Br. 4. Although "[i]t is well established that a note or memorandum under the statute of frauds need not contain all of the details of an agreement between the parties," *Gold Seal Prods. v. R. K. O. Radio Pictures*, 134 Cal. App. 2d 843, 864, 286 P.2d 954 (1955) (quoting *Gibson v. De La Salle Inst.*, 66 Cal. App. 2d 609, 627, 152 P.2d 774 (1944)) (quotation marks omitted), it still must contain the "'essential' or 'meaningful' terms," *In re Marriage of Benson*, 36 Cal. 4th 1096, 1108, 32 Cal. Rptr. 3d 471, 479, 116 P.3d 1152, 1159 (2005) (citations omitted). Given that SOAProjects' main concern was protecting clients from hiring away SOAProjects consultants and then discontinuing use of SOAProjects services, the salary fee and "in-house" restriction terms are essential in the context of the agreement. By not including them and failing to outline any other terms with reasonable certainty, the Wimmer letter fails to qualify as a memorandum under the statute of frauds.

At the hearing, SOAProjects' counsel argued that the Court should also consider Gupta's e-mail on November 22, 2009 as another writing that, in connection with the Wimmer letter, satisfies the statute of frauds. SOAProjects is correct that "several papers, only one of which is signed by the party to be charged, may be considered together to constitute an adequate memorandum of the contract." *Karl v. Jebien*, 231 Cal. App. 2d 769, 772, 42 Cal. Rptr. 461 (1965) (citing *Searles v.*

7

*Gonzalez*, 191 Cal. 426, 431, 216 P. 1003 (1923)); *see also Straus v. De Young*, 155 F. Supp. 215, 218 (S.D. Cal. 1957) (holding that it is well-settled in California that "it is not necessary that the party to be charged sign all of the documents comprising the contract, if one of the documents in the series, or all of the documents taken together set forth clearly and completely all of the essential elements of the contract, except those which may be reasonably implied as being present and inherent in the deal") (citations omitted). Gupta's e-mail, however, fails to cure the Wimmer letter's defects. SOAProjects claims that Gupta's e-mail contained the following statements.

> SOAProjects will make 25% of my salary upfront which will be $53,250 which is equivalent of 444 hours. So if there is a 20-35% reduction of work due to the fact that I am there now, that will be covered through this upfront payment.
>
> In addition, I will make sure SOAProjects continue to do the [financial consulting and compliance services] work in Southern California. Also, I will try to have SOAProjects do the [financial consulting and compliance services] work for SCM in Germany . . . .
>
> My job at SCM will be mainly involved with operations responsibility and not necessarily writing the actual technical memos, etc. I will be mainly involved in managing and reviewing the work and therefore SCM will still need assistance from SOAProjects for quite a lot technical accounting work.

FAC ¶¶ 39-40. Although the first paragraph does provide a definitive statement that SOAProjects will be paid the 25% fee alleged to be part of the agreement, the rest of the e-mail suffers from the same infirmities as the Wimmer letter; it fails to state any essential terms of a contract between SCM and SOAProjects with reasonable certainty. Gupta states that he, not SCM, will make sure that SOAProjects continues to perform work for SCM. Moreover, he "will try" and have SOAProjects perform work for SCM in Germany. Finally, the language of the last paragraph reads as a personal communication between Gupta and SOAProjects, not a contract term.

Because the Employment Transition Agreement cannot, by its terms, be performed in one year and because no note or memorandum exists spelling out its essential terms with reasonable certainty, the statute of frauds renders the alleged contract unenforceable. However, SOAProjects can overcome this if SOAProjects can adequately allege equitable estoppel.

### 2. Equitable Estoppel

SOAProjects' second argument is that SCM is estopped from asserting the statute of frauds defense. Opp'n 6. "In California, . . . the doctrine of equitable estoppel can, in appropriate

8

1   circumstances, prevent a party from asserting the Statute of Frauds." *In re Eastview Estates II*, 713 F.2d 443 (9th Cir. 1983) (citation omitted).  According to the authority cited by SOAProjects, Opp'n 6, "a substantial change of position in reliance on an oral agreement will estop reliance on the statute [of frauds]." *Estate of Housley*, 56 Cal. App. 4th 342, 357, 65 Cal. Rptr. 2d 628 (1997) (quoting *Hall v. Hall*, 222 Cal. App. 3d 578, 585-86, 271 Cal. Rptr. 773 (1990)).  SOAProjects claims that its conduct meets this standard.  According to SOAProjects, it changed its position in reliance on the alleged promises made during the November 26, 2009 conference call.  Opp'n 6-7.

Another California Court of Appeal outlines a slightly more rigorous equitable estoppel standard.  In *Byrne v. Laura*, 52 Cal. App. 4th 1054, 1068, 60 Cal. Rptr. 2d 908 (1997), the court identified the leading case on equitable estoppel as *Monarco v. Lo Greco*, 35 Cal. 2d 621, 623, 220 P.2d 737 (1950).  In that case, Justice Traynor stated that the doctrine of estoppel is meant "to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances." *Monarco*, 35 Cal. 2d at 623.  Justice Traynor went on to say that "[s]uch fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract." *Id.* (citing cases).  According to the court in *Byrne*, "[t]he equitable principles set forth in *Monarco* have been echoed in many subsequent cases and are well settled." 52 Cal. App. 4th at 1068 (citing cases).  This standard appears to be the prevailing one.

Under this standard,[3] SCM argues that SOAProjects failed to allege facts showing that SCM engaged in any fraudulent conduct or that SOAProjects suffered any unconscionable injury.  Reply Br. 6.  SOAProjects has, however, pled enough facts to state a plausible claim that equitable estoppel applies in this case.  First, "[i]n order to raise [equitable] estoppel, fraud in some form is essential, but it is not required that an actual intent to defraud or mislead exist; all that is required is that there exist a fraud inhering in the consequence of thus setting up the statute." *Notten v.*

---

[3] SCM actually cites to *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 84 Cal. Rptr. 3d 275 (2008) for the equitable estoppel standard.  That case, however, involved estoppel via part performance.  Because part performance and equitable estoppel are separate grounds to defeat the statute of frauds, *see Warren v. Merrill*, 143 Cal. App. 4th 96, 113 & n.19, 49 Cal. Rptr. 3d 122 (2006), and SOAProjects has not argued part performance, *Secrest* is not applicable.

9

Case No.: 10-CV-01773-LHK
ORDER GRANTING IN PART AND DENYING IN PART SCM'S MOTION TO DISMISS

*Mensing*, 3 Cal. 2d 469, 476, 45 P.2d 198, 202 (1935) (quoting *Seymour v. Oelrichs*, 156 Cal. 782, 796, 106 P. 88, 94 (1909)); *see also Mintz v. Rowitz*, 13 Cal. App. 3d 216, 223-24, 91 Cal. Rptr. 435 (1970) (applying *Notten*). Moreover, the party invoking the statute of frauds as a defense need not have represented that the contract would be put in writing in order to be estopped. *See Monarco*, 35 Cal. 2d at 626. Rather, the important promise is the promise that the oral contract will be performed. *Id.*

SOAProjects alleges enough facts to state a plausible claim that this type of fraud has occurred. According to SOAProjects, it agreed not to enforce any potential causes of action under the Master Agreement in exchange for SCM's promises that SCM would pay the 25% fee, continue to use SOAProjects' services in 2010 and 2011, and not employ Gupta to perform "in-house" the same services that Gupta performed for SCM as an employee of SOAProjects. FAC ¶ 41. SOAProjects claims that Gupta and SCM confirmed these promises on multiple occasions following the initial agreement. After Gupta left SOAProjects and began work at SCM, SOAProjects alleges that SCM failed to pay any fee, discontinued engaging SOAProjects for any consulting services, and is using SOAProjects' trade secrets for SCM's benefit.

Second, "[t]o cause an estoppel there must be unusual circumstances which give the injury an unjust and unconscionable character." *Goldstein v. McNeil*, 122 Cal. App. 2d 608, 611, 265 P.2d 113 (1954) (citation omitted). A simple allegation that a party has not lived up to its end of the bargain is not enough. *See Carlson v. Richardson*, 267 Cal. App. 2d 204, 208, 72 Cal. Rptr. 769, 772 (1968) ("[L]oss of bargain, and damage resulting therefrom, do not of themselves estop a [party] from relying upon the Statutes of Frauds.") (citation omitted). Here, however, SOAProjects' FAC alleges an injury above and beyond SCM's unwillingness to fulfill its obligations under the alleged agreement. SOAProjects alleges that SCM acted in concert with Gupta to misappropriate SOAProjects' trade secrets. SOAProjects further alleges that because SCM and Gupta succeeded in obtaining these trade secrets, Gupta can perform for SCM the same services that he performed for SCM while employed at SOAProjects. According to SOAProjects, SCM's alleged scheme only succeeded because SOAProjects substantially relied on SCM's alleged promises. These allegations are enough to survive a motion to dismiss. This finding is supported

1   by the fact that "[w]hether the doctrine of equitable estoppel should be applied in a given case is

2   generally a question of fact." *Byrne*, 52 Cal. App. 4th at 1068 (citation omitted).

3         Because SOAProjects could still prevent SCM from asserting the statute of frauds to

4   invalidate the Employment Transition Agreement by adequately alleging equitable estoppel, the

5   Court will not dismiss SOAProjects' breach of contract claim.

### 3. Severability

7         Finally, SOAProjects argues that the Employment Transition Agreement is enforceable to

8   the extent that it was to be performed within one year. Opp'n 7. In support, SOAProjects cites to

9   the rule announced in *White Lighting Co. v. Wolfson*: "If a claimant alleges two or more promises

10  of performance 'that can easily be distinguished and separated by the court by reference to the

11  agreement itself', only that promise of performance which falls clearly within the statute of frauds

12  cannot be enforced." 68 Cal. 2d 336, 345, 66 Cal. Rptr. 697 (1968) (quotation omitted).

13        SCM cites to a more recent Ninth Circuit opinion that applied *White Lightning* more

14  narrowly. Reply Br. 5. In *Texaco, Inc. v. Ponsoldt*, the court "identified two scenarios which

15  warrant application of the divisibility rule." 939 F.2d 794, 801 (9th Cir. 1991). "First, promises

16  not falling under the statute of frauds may be excised and enforced where the promises would

17  otherwise be severable under standard rules of divisibility." *Ponsoldt*, 939 F.2d at 801. "Generally

18  speaking, the test of whether a contract is divisible is that if the consideration is single, the contract

19  is entire, but if the consideration is apportioned, the contract may be regarded as severable."

20  *Ponsoldt*, 939 F.2d at 801 (quoting *Simmons v. California Inst. of Tech.*, 34 Cal. 2d 264, 275, 209

21  P.2d 581, 587-88 (1949)) (quotation marks omitted). The court noted that the *White Lightning*

22  court employed this rule. *Id.* "Second, a promise coming within the statute of frauds may be

23  excised—and the remainder of the contract enforced—where the promise is clearly ancillary to the

24  contract as a whole." *Id.*

25        This Court agrees with SCM, *see* Reply Br. 5-6, and the *Ponsoldt* court. The facts of *White*

26  *Lightning* are distinguishable from this case and do not warrant an overly broad application of its

27  holding. The facts pleaded in the FAC do not show a divisible agreement under either of the

28

11

Case No.: 10-CV-01773-LHK
ORDER GRANTING IN PART AND DENYING IN PART SCM'S MOTION TO DISMISS

*Ponsoldt* scenarios. As a result, SOAProjects can only succeed in enforcing the alleged contract if SCM is equitably estopped from relying on the statute of frauds.

### 4. Summary

Even though SOAProjects did not plead facts showing that a writing existed sufficient to satisfy the statute of frauds or that the contract was divisible, SOAProjects did plead enough facts showing that it may be able to use equitable estoppel to prevent SCM from asserting the statute of frauds defense. Because it is plausible that SOAProjects will be able to prevent SCM from invalidating the Employment Transition Agreement, the Court denies SCM's motion to dismiss SOAProjects' breach of contract claim.

### B. Promissory Estoppel

SCM next argues that SOAProjects' promissory estoppel claim fails because SOAProjects' breach of contract claim is based on the same promises. Mot. to Dismiss 7. Generally, a plaintiff cannot rely on promissory estoppel when it also seeks to enforce a contract that it argues is supported by valid consideration. *See Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009) ("Plaintiffs cannot state a cause of action for promissory estoppel because a valid contract, supported by consideration, governs the same subject matter as the alleged promise."). Promissory estoppel is meant as a "substitute for consideration." *Id.* at 1162. The California Supreme Court has stated that the doctrine of promissory estoppel is meant "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249, 74 Cal. Rptr. 398, 449 P.2d 462 (1969).

SOAProjects' central theory is that SCM made promises to SOAProjects and that SOAProjects reasonably relied on those promises to its detriment. By claiming both breach of contract and promissory estoppel, SOAProjects is simultaneously alleging that those promises were part of a valid contract and that they were unsupported by consideration. Even though SOAProjects' breach of contract and promissory estoppel claims are mutually exclusive, *see Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (holding that as a matter of law, promises supported by adequate consideration cannot also form the basis of a promissory estoppel

claim), the federal rules allow plaintiffs to plead inconsistent claims and theories, *see Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) (holding that the federal rules give freedom to plead inconsistent claims) (citing FED. R. CIV. P. 8(e)(2)); *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) ("The Federal Rules of Civil Procedure . . . allow plaintiffs to plead inconsistent theories . . . .") (citing FED. R. CIV. P. 8(d)(3)).

Therefore, SCM's motion to dismiss SOAProjects' promissory estoppel claim is denied.

### C.  Unjust Enrichment

SCM initially argued that no cause of action for unjust enrichment exists in California. Mot. to Dismiss 10.  Although this is technically true, *see Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003), courts have held that unjust enrichment is equivalent to restitution, *see Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 265 Cal. Rptr. 525 (1989), and have allowed litigants to seek restitution using an unjust enrichment claim, *see Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682, 699 (2010). "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388, 20 Cal. Rptr. 3d 115, 121 (2004) (citations omitted).  At least part of SOAProjects' unjust enrichment claim is based on SCM's unwillingness to comply with the provisions of the Employment Transition Agreement.  FAC ¶ 119.  Those provisions may prove unenforceable due to the statute of frauds, and thus could be enforced through unjust enrichment.

Nevertheless, SOAProjects' attempt to use unjust enrichment to enforce the Employment Transition Agreement fails.  To make out a claim for unjust enrichment SOAProjects must show that SCM received a benefit and that SCM unjustly retained the benefit at SOAProjects' expense. *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000) (citing *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-63, 15 Cal. Rptr. 2d 173 (1992)); *see also AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003). SOAProjects appears to claim that SCM's retention of Gupta constitutes a benefit.  Even accepting this, SOAProjects' complaint contains no facts showing that such retention is unjust. Indeed,

1    SOAProjects' counsel conceded as much at oral argument.  California has a strong public policy in
2    favor of allowing employees to freely obtain new employment.  *Cal Francisco Inv. Corp. v.*
3    *Vrionis*, 14 Cal. App. 3d 318, 323, 92 Cal. Rptr. 201 (1971) ("Public policy favors the right of an
4    individual to pursue any calling, business or profession."); *see* CAL. BUS. & PROF. CODE § 16600
5    ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in
6    a lawful profession, trade, or business of any kind is to that extent void."); *see also Latona v. Aetna*
7    *U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1093-94 (C.D. Cal. 1999) (Section 16600's "protection
8    against restraint of employment qualifies as a strong public policy in California.").  Allowing
9    SOAProjects' claim that SCM's unwillingness to comply with its alleged agreement while still
10   employing Gupta constitutes unjust enrichment would contravene this well-established public
11   policy.

12   SOAProjects' attempt to use unjust enrichment to recover for SCM's alleged
13   misappropriation of SOAProjects' trade secrets likewise fails because it is preempted by the
14   California Uniform Trade Secret Act.  *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210,
15   236, 109 Cal. Rptr. 3d 27, 50-51 (2010) ("We thus reaffirm that CUTSA provides the exclusive
16   civil remedy for conduct falling within its terms, so as to supersede other civil remedies based upon
17   misappropriation of a trade secret.") (citation omitted).  SOAProjects' counsel conceded this at the
18   hearing and represented that SOAProjects could not, at this time, allege any facts that SCM
19   misappropriated any information not falling under the Trade Secret Act.

20   As a result, SOAProjects' claim for unjust enrichment is dismissed without leave to amend.

21   **D.  Misappropriation of Trade Secrets**

22   SCM claims that SOAProjects' complaint fails to plead enough facts to state a
23   misappropriation of trade secrets claim.  Mot. to Dismiss 10-11.  "To state a cause of action for
24   misappropriation of trade secrets under the Uniform Trade Secrets Act ('UTSA'), plaintiff must
25   plead two primary elements: (1) the existence of a trade secret, and (2) misappropriation of the
26   trade secret." *AccuImage Diagnostics*, 260 F. Supp. 2d at 950 (citing CAL. CIV. CODE § 3426.1(b))
27   (footnote omitted).  SCM claims that because SOAProjects does not plead facts showing any
28   specific trade secrets that Gupta or SCM misappropriated, its claim must be dismissed. Reply Br.

1   10.    SOAProjects has, however, identified a number of categories of trade secrets that Gupta downloaded onto his computer and e-mailed to himself. These include SOAProjects' proprietary technical documents, copies of SOAProjects' white papers, confidential information related to at least four clients, and SOAProjects' strategies, pricing information, current and prospective customer lists, customer information, and products and designs. SOAProjects has alleged enough facts to state a plausible claim that it had trade secrets and Gupta took those into his possession.

Thus, the question becomes whether SOAProjects has pled enough facts raising a plausible claim that SCM misappropriated those trade secrets. "The UTSA defines 'misappropriation' to include two types of conduct: (1) acquisition, or (2) disclosure or use." *Id.* at 951 (citing CAL. CIV. CODE § 3426.1(b)) (footnote omitted). SCM claims that the facts alleged in SOAProjects' FAC rely on a theory of inevitable disclosure to implicate SCM. Mot. to Dismiss 12. SCM is correct that "no California court has adopted the inevitable disclosure doctrine." *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 708 (9th Cir. 2003); *see Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464, 125 Cal. Rptr. 2d 277, 294 (2002) ("[T]he inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets."). Thus, the fact that Gupta allegedly took trade secrets and is now performing the same work for SCM "in-house" does not state a claim against SCM.

SOAProjects, however, has alleged more than inevitable disclosure. According to SOAProjects' FAC, SCM acted in concert with Gupta in misappropriating SOAProjects' trade secrets and is knowingly enjoying the fruits of his theft. FAC ¶ 141. This allegation, in the context of the other circumstantial allegations, is sufficient to state a plausible claim that SCM acquired or is using SOAProjects' trade secrets.

Therefore, SCM's motion to dismiss SOAProjects' misappropriation claim is denied.

///
///
///
///
///

## IV.  CONCLUSION

For the foregoing reasons, SCM's motion to dismiss SOAProjects' claim for unjust enrichment is GRANTED without leave to amend.  SCM's motion to dismiss SOAProjects' claims for breach of contract, promissory estoppel, and misappropriation of trade secrets is DENIED.

**IT IS SO ORDERED.**


Dated:  December 7, 2010                                      *Lucy H. Koh*
                                                                                    LUCY H. KOH
                                                                                    United States District Judge